IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN ST. MARIE : CIVIL ACTION
:
v. :
:
PIKE TELECOM & RENEWABLES, LLC : NO. 23-77

## MEMORANDUM

**Padova, J.**                                                                                    **May 24, 2023**

Plaintiff John St. Marie commenced this employment discrimination action against his former employer, Defendant Pike Telecom & Renewables, LLC ("Pike Telecom"), alleging that he was terminated from his job on account of his disability and age.   Defendant has moved to dismiss the First Amended Complaint ("the Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.   For the following reasons, we grant in part and deny in part Pike Telecom's Motion.

## I.      BACKGROUND

The Complaint alleges that Plaintiff is a fifty-eight-year-old male, who has over thirty-five years of experience as an engineer.  (Compl. ¶¶ 11, 14.)   In 2022, Plaintiff was recruited for a position with Pike Telecom by a third party, and he had a telephone interview with Patrick Itterly from Pike Telecom and the company's Vice President.   (Id. ¶ 13.)   On March 15, 2022, Plaintiff was offered a position as a "Communications Specialist 3," and Itterly told him that he would be tasked with training junior engineers.   (Id. ¶ 14.)   Plaintiff was officially hired that same day.   (Id. ¶ 12.)

When Plaintiff started the job, he was given very few training responsibilities, and he was not provided with any orientation regarding his job duties.   (Id. ¶ 15.)   Instead, Plaintiff was required to draft engineering designs, without first being given any direction regarding the company's stylistic design preferences or work processes.   (Id. ¶ 16.)   In the absence of direction,

Plaintiff conferred with other engineer employees as to Pike Telecom's expectations.   (Id. ¶ 17.) Plaintiff repeatedly asked for training and feedback, but he did not receive either and, on one occasion, Itterly told him that, in light of his age and experience, he should not have any questions. (Id. ¶ 32.)

Plaintiff has an amputated finger on his right, dominant hand, which limits his ability to perform manual tasks, including his ability to hold a pencil.   (Id. ¶ 18.)   He was nonetheless able to perform the essential functions of his job well with reasonable medical accommodations.   (Id. ¶ 19.)   In order to do his job with Pike Telecom, Plaintiff installed on his company-issued computer his own CAD drafting and design program called BlueBeam, which aided him in performing his drafting work.   (Id. ¶ 17.)   Plaintiff had one "hiccup" using the program, when he discovered that the CAD program "had not been converting [his] designs correctly to [Pike Telecom's] program," but that was "easily remedied and resolved."   (Id. ¶ 25.)

Itterly did not become aware of Plaintiff's disability until April 2, 2022, when Itterly asked Plaintiff in a meeting why he was using a CAD program instead of hand-drawing his designs.   (Id. ¶ 20.)   Plaintiff showed Itterly his amputated finger, and "Itterly expressed an immediate, visible look of distaste."   (Id. ¶ 21.)   Plaintiff explained to Itterly that he used his own CAD program because he is unable to hold a pencil in his right hand.   (Id.)   Itterly "chastised Plaintiff for requiring the use of the CAD BlueBeam program, and disparagingly advised Plaintiff that 'most guys hand draw.'"   (Id.)

In addition to using the CAD program, Plaintiff also asked that Pike Telecom "provide him a tablet to use in lieu of being required to take handwritten notes when out in the field, which was very difficult for Plaintiff due to his disability."   (Id. ¶ 22.)   Itterly told Plaintiff that he would

provide Plaintiff with a tablet, but no tablet was ever provided.  (Id. ¶ 23.)  Moreover, Plaintiff never received any confirmation that Pike Telecom had ordered him a tablet.  (Id.)

Shortly after the April 2, 2022 meeting, Itterly "began to unduly criticize Plaintiff's work," informing Plaintiff for the first time in an April 14, 2022 email that he had concerns about Plaintiff's work.  (Id. ¶ 24.)  At the same time, Plaintiff's co-workers and the company's drafting department were approving Plaintiff's designs.  (Id. ¶ 25.)  Plaintiff was also asked to train two younger employees, which further indicated that his performance was not lacking.  (Id. ¶ 29.)

Plaintiff "reached out to Itterly on . . . April 26, 2022, asking if everything looked good moving forward, but he never received a response."  (Id. ¶ 26.)  Plaintiff continued to forward his designs to Communications Specialist 2 employees, and they continued to approve and forward his designs to drafting, stating that his designs "looked good."  (Id. ¶ 27.)  Nevertheless, on May 13, 2022, Itterly terminated Plaintiff, purportedly for design and performance issues.  (Id. ¶ 28.)  Following Plaintiff's termination, Pike Telecom reassigned Plaintiff's duties and responsibilities to individuals significantly younger than Plaintiff.  (Id. ¶ 33.)

After filing a charge of discrimination with the EEOC and receiving a right to sue letter, Plaintiff filed the instant action on January 9, 2023.  (Id. ¶ 5.)  The Complaint contains two Counts.  Count I asserts claims of disability discrimination/wrongful termination, failure to accommodate, and retaliation pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Count II asserts claims of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  Pike Telecom has filed a Motion to Dismiss the Complaint in its entirety.

## II.    LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the

complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).   "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."   Shorter v. United States, 12 F.4th 366, 371 (3d Cir. 2021) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).   However, we "are not bound to accept as true a legal conclusion couched as a factual allegation."   Wood v. Moss, 572 U.S. 744, 755 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (second alteration in original)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"   Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).   Under this standard, a Complaint need not need plead all of the facts necessary to prove each element of the plaintiff's claims; it need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence of [each] necessary element."   Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (alteration in original) (quoting Fowler, 578 F.3d at 213).   In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not

sufficient "to raise a right to relief above the speculative level."   Geness v. Admin. Off. of Pa.

Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

## III.   DISCUSSION

### A.   ADA - Disability Discrimination/Wrongful Termination

The ADA provides that "[n]o covered entity shall discriminate against a qualified

individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of

employees, . . . job training, and other terms, conditions, and privileges of employment."   42

U.S.C. § 12112(a).   In order to state a claim for disability-based discrimination under the ADA, a

complaint must allege: "(1) that [the plaintiff] is disabled within the meaning of the ADA, (2) that

he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he

was subjected to an adverse employment decision as a result of discrimination.'"   Sulima v.

Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010) (citation omitted).   A person is

disabled under the ADA if he has "a physical or mental impairment that substantially limits one

or more major life activities" or is "regarded as having such an impairment."   42 U.S.C. §

12102(1).

Here, Plaintiff asserts that he was wrongfully terminated on account of his disability.   Pike

Telecom argues that the Complaint fails to allege facts to support the first and third elements of

the Plaintiff's wrongful termination claim.   With respect to the first element, the Complaint

alleges that Plaintiff is disabled because he has an amputated finger on his dominant hand, which

substantially limits his ability to perform manual tasks, including "tasks involving fine motor

coordination, grasping, and hand strength."   (Compl. ¶ 18.)   Pike Telecom nevertheless argues

Plaintiff has "admitted" that he is not disabled because he alleges that his amputated finger did not

inhibit his ability to perform the functions of his job.   However, the Complaint alleges that

Plaintiff can perform his job <u>with reasonable accommodations</u>.   (<u>Id.</u> ¶¶ 19, 37).   The ADA makes clear that we may not take into account the "ameliorative effects" of accommodations in assessing whether a plaintiff's impairment substantially limits a major life activity.   42 U.S.C. § 12102(4)(E)(i)(III).   Accordingly, we reject Defendant's argument that Plaintiff has admitted that he is not disabled and thus has failed to adequately allege the first element of his discrimination claim.

Defendant also argues that the Complaint fails to allege facts to support a reasonable inference that Plaintiff's employment was terminated on account of his disability because it alleges—and thus concedes—that Itterly expressed "concerns" with Plaintiff's performance in an April 14, 2022 email.   (Compl. ¶ 24.)   However, the Complaint also alleges that that Itterly "expressed an immediate, visible look of distaste" when he first saw Plaintiff's amputated finger on April 2, 2022, "chastised Plaintiff for requiring the use of the CAD BlueBeam program," began criticizing Plaintiff's work shortly after learning of the disability, and abruptly terminated Plaintiff's employment weeks later, on May 13, 2022.   (<u>Id.</u> ¶¶ 21, 24-25, 28.)   At this early stage of the proceedings, these allegations are sufficient to support a reasonable inference that Plaintiff was terminated because of his disability and not because of Itterly's professed concerns regrding Plaintiff's performance.   We therefore deny Defendant's Motion insofar as it seeks dismissal of Plaintiff's disability discrimination/wrongful termination claim.

### B.    ADA - Failure to Accommodate

The ADA provides that an employer violates the statute when it fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."   42 U.S.C.

§ 12112(b)(5)(A).   Pike Telecom argues in its Motion that the Complaint fails to state a failure to accommodate claim upon which relief can be granted because it fails to allege all of the essential elements of such a claim and because Plaintiff has failed to exhaust his administrative remedies.

    1.   Elements of the Claim

In order to state a claim for failure to accommodate, a plaintiff must allege that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." Dreibelbis v. Cnty. of Berks, 438 F. Supp. 3d 304, 316 (E.D. Pa. 2020) (quoting Capps v. Mondelez Glob., LLC, 847 F.3d 144, 157 (3d Cir. 2017)).   As the United States Court of Appeals for the Third Circuit has explained, the interactive process that these elements contemplate imposes a duty on both parties "to assist in the search for appropriate reasonable accommodation." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999) (quotation omitted).

Here, as set forth above, the Complaint alleges that Plaintiff was disabled and that Pike Telecom knew of his disability.   (Id. ¶¶ 18, 20.)   It further alleges that Plaintiff asked for a reasonable accommodation in the form of permission to use the CAD drawing program as well as the provision of a tablet to use "in lieu of being required to take handwritten notes . . . out in the field."   (Id. ¶ 22.)   While the Complaint does not allege that Plaintiff was denied use of the CAD drawing program, it alleges that Pike Telecom promised to, but did not, provide Plaintiff with the requested tablet.   (Id. ¶ 23.)

Defendant argues that because the Complaint alleges that Defendant agreed to provide Plaintiff with a tablet after he requested one, we should find that the Complaint fails to set forth facts that would support a reasonable inference that Defendant did not engage in a good faith effort

to accommodate him.  Specifically, it argues that the Complaint makes clear that it satisfied its obligation to act in good faith in the interactive process by meeting with Plaintiff, obtaining information about Plaintiff's conditions and limitations, asking Plaintiff what he wanted, and showing "some sign of having considered [Plaintiff's] request."  (Def.'s Mem. at 10 (citing Taylor, 184 F.3d at 317).)

However, "[t]he interactive process, as its name implies, requires the employer to take some initiative."  Taylor, 184 F. 3d at 315.  Indeed, the process would have "little meaning if it was interpreted to allow employers, in the face of a request for accommodation, simply to sit back passively, [and] offer nothing."  Id.  Here, reading the allegations of the Complaint in the light most favorable to Plaintiff, we find that they support a reasonable inference that Defendant merely paid lip service to Plaintiff's request for a tablet as a reasonable accommodation and had no intention to supply the tablet in spite of agreeing to supply it.   (Compl. ¶ 23 (alleging that a tablet was never provided to Plaintiff and that Defendant never provided Plaintiff with any confirmation that it had actually ordered the device).)   Moreover, the Complaint alleges that when Plaintiff reached out to Itterly on April 26, 2022, to discuss his performance further, Itterly did not respond. (Compl. ¶ 26.)   Under these circumstances, we conclude that the Complaint supports a reasonable inference that Pike Telecom did not make a good faith effort to actually consider Plaintiff's request for accommodations (specifically, his request for a tablet), much less affirmatively "assist in the search for appropriate reasonable accommodation."[1]  Taylor, 184 F.3d at 312 (quotation omitted).

---

[1]  Pike Telecom repeatedly argues that it ordered the tablet and that the tablet simply had not arrived before Plaintiff was terminated.  However, the Complaint does not allege that Defendant ordered the tablet and, on a Motion to Dismiss, we cannot consider new facts that are alleged only in Defendant's Motion.  Alpizar-Fallas, 908 F.3d at 914 (quotation omitted).

We therefore reject Pike Telecom's argument that the Complaint does not adequately allege that it failed to make a good faith effort to assist.

Pike Telecom also argues that the Complaint does not plausibly allege the fourth element of a failure to accommodate claim—that Plaintiff could have been reasonably accommodated—because the requested accommodations would not have rendered Plaintiff capable of performing the essential functions of his job. Specifically, it argues that the Complaint's allegations make clear that Plaintiff was using the CAD program for his drawings and it nevertheless found his performance to be unsatisfactory. (Id. ¶ 24.) However, as we understand Plaintiff's failure to accommodate claim, it hinges primarily on Pike Telecom's failure to provide a tablet and is not grounded on an assertion that Plaintiff was not permitted to use the CAD program. Thus, Defendant's arguments that allowing Plaintiff to use the CAD program alone did not enable him to perform the job satisfactorily are inapposite. Moreover, the Complaint alleges facts that counter Defendant's assertion that Plaintiff's performance was unsatisfactory by alleging that Plaintiff performed his job well, that his co-workers approved his designs, telling him that they looked good, that he was asked to train others, and that Itterly's criticism of Plaintiff's work only began after he saw Plaintiff's amputated finger and "expressed [a] . . . look of distaste." (Id. ¶¶ 15, 21, 24-25, 27, 29.) These allegations allow for a reasonable inference that Plaintiff was, in fact, performing well and that Defendant's criticisms were unwarranted. Accordingly, we reject Defendant's argument that the Complaint does not plausibly allege either the third or fourth elements of a failure to accommodate claim.

2.   Exhaustion

Pike Telecom argues in the alternative that we should dismiss Plaintiff's failure to accommodate claim because he has failed to exhaust his claim that Pike Telecom did not

accommodate him by failing to provide him with a tablet. "[B]efore filing an ADA claim in federal court," a plaintiff "must exhaust [his] administrative remedies." Simko v. U.S. Steel Corp, 992 F.3d 198, 204 (3d Cir. 2021) (citing Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999); 42 U.S.C. §§ 12117(a), 2000e-5). "These pre-suit requirements, which include the step of filing a charge and receiving a right-to-sue letter from the EEOC, are 'essential parts of the statutory plan, designed to correct discrimination through administrative conciliation and persuasion if possible, rather than by formal court action.'" Id. at 206-07 (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976)) (citation omitted). Thus, "[t]he exhaustion requirement . . . advances the remedial purposes of the ADA." Id. at 207.

Where a plaintiff obtains a right-to-sue letter for one charge of discrimination but later seeks to file a civil action for a different, additional claim, the court, upon a motion by the defendant, must determine "whether [the] later claim needs to be exhausted despite the filing of a previous [EEOC] charge." Id. at 207. In making this determination, the Third Circuit applies "a two-pronged inquiry into whether 'the acts alleged in the subsequent . . . suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom.'" Id. (alterations in original) (quoting Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)) (citation omitted). "[W]hen determining whether a claim fairly or reasonably falls within the investigation arising from a [prior EEOC] charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." Id.

Pike Telecom does not argue that Plaintiff did not include any failure to accommodate claim in his EEOC charge and, indeed, the EEOC charge includes allegations concerning Plaintiff's request that he be accommodated by being granted permission to use the CAD program.

(See EEOC Charge, attached as Ex. A to Def.'s Mem.)   Rather, Pike Telecom merely argues that Plaintiff did not mention his request for a tablet in that charge and that a claim based on the provision of a tablet was therefore not within the scope of the EEOC complaint.   It further argues that "it would be unreasonable for Pike [Telecom] to expect that Plaintiff would later sue for failure to accommodate his request for a tablet when Pike [Telecom] indisputably agreed to provide one for him."   (Def. Reply Br. at 9.)

We conclude, however, that Plaintiff's failure to accommodate claim grounded on the tablet is fairly within the scope of any investigation into Plaintiff's failure to accommodate claim in his EEOC complaint.   Indeed, Plaintiff's complaint about the tablet advances the same theory of discrimination (disability discrimination/failure to accommodate) as one theory included in Plaintiff's EEOC charge.   Moreover, the claim about the tablet arises from the same essential facts as the claim about the CAD program, which was included in the charge, because, according to the Complaint, both requests for accommodation were made at the same meeting on April 2. 2022, and both concerned Plaintiff's need for accommodations because of his amputated finger, which limits his ability to perform manual tasks.   (Compl. ¶ 22.)   Under these circumstances, we reject Pike Telecom's argument that Plaintiff failed to exhaust his failure to accommodate claim based on provisions of the tablet.

Having rejected this argument as well as the argument that Plaintiff failed to allege the essential elements of a failure to accommodate claim, we deny Pike Telecom's Motion insofar as it seeks dismissal of that claim.

### C.   ADA - Retaliation

"[I]t is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA."   Shellenberger v. Summit

Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003).   "To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Laguna v. Chester Hous. Auth., 616 F. Supp. 3d 462, 469 (E.D. Pa. 2022) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).   "Protected activity" in this context "includes retaliation against an employee for requesting an accommodation."   Sulima, 602 F.3d at 188.

Pike Telecom argues that Plaintiff has failed to state a claim for retaliation because the Complaint does not sufficiently allege a causal connection between Plaintiff's termination and his request for accommodations.   Plaintiff argues in response that there is sufficient temporal proximity between his request for accommodation and his termination to support a reasonable inference of causation.

"In determining whether a causal connection exists between protected activity and an adverse employment action, courts 'focus on two factors: (1) the "temporal proximity" between the protected activity and the alleged discrimination and (2) the existence of "a pattern of antagonism in the intervening period."'"   Thomas v. Brandywine Hosp., LLC, Civ. A. No. 21-3288, 2022 WL 507478, at *3 (E.D. Pa. Feb. 18, 2022) (quoting Jensen v. Potter, 435 F.3d 444, 450 (3d Cir. 2006)).   "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality . . . ."   LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (citations omitted).   "[W]here the temporal proximity is not so close as to be 'unduly suggestive,'" an allegation of causation may be supported with "timing plus other evidence."   Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).

Here, the time between the protected activity (the request for accommodation) on April 3 and Plaintiff's termination on May 13 was approximately six weeks.   "There is no bright line rule for unusually suggestive temporal proximity."   Harrison-Harper v. Nike Inc., 788 F. App'x 846, 849 (3d Cir. 2019) (quotation omitted).   "The Third Circuit has held that time periods of two days and ten days are sufficiently suggestive, but a time period of 'over two months' was 'not unduly suggestive' and was insufficient to support an inference of causal connection."   Henderson v. Edens Corp., Civ. A. No. 09-1308, 2015 WL 4977189, at *9 (E.D. Pa. Aug. 20, 2015) (citing Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 760-61 (3d Cir. 2004)).   It has also held that ordinarily, "a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive."   Blakney v. City of Philadelphia, 559 F. App'x 183, 186 (3d Cir. 2014) (citing Farrell, 206 F.3d at 280) (additional citations omitted).

Here, Plaintiff relies solely on timing to support his allegation of causation, and the Complaint does not allege "a patten of antagonism in the intervening period."   Thomas, 2022 WL 507478, at *3 (quotation omitted).   We conclude that, under the circumstances presented, the six-week period between his request for accommodations and his termination is simply not close enough in time to be unduly suggestive of retaliation under the law in this Circuit.   Blakney, 559 F. App'x at 186; see also Hernandez v. Temple Univ. Hosp., Civ. A. No. 17-4381, 2019 WL 130508, at *8 (E.D. Pa. Jan. 8, 2019) (concluding that six weeks between adverse employment action and protected activity is not unduly suggestive of retaliation); Allen v. Nutrisystem, Inc., Civ. A. No. 11-4107, 2013 WL 1776440, at *4, *6 (E.D. Pa. Apr. 25, 2013) (same).   Accordingly, we conclude that Plaintiff has failed to adequately allege the causation element of his prima facie case and thus fails to assert a retaliation claim upon which relief can be granted.   We therefore

13

grant Defendant's Motion to Dismiss insofar as it seeks dismissal of Plaintiff's ADA retaliation claim.

### D.      ADEA

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."   29 U.S.C.  §  623(a)(1).   A complaint asserting a prima facie case of employment discrimination in violation of the ADEA must allege the following elements: "(1) [the plaintiff] is over forty, (2) is qualified for the position in question, (3) suffered from an adverse employment decision, and (4) that his . . . replacement was sufficiently younger to permit a reasonable inference of age discrimination."   Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004) (citing Duffy v. Paper Magic Grp., Inc., 265 F.3d 163, 167 (3d Cir. 2001)); see also Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009) (citing Potence, 356 F.3d at 370).

Pike Telecom concedes that the Complaint adequately alleges that Plaintiff, at 58 years old, is a member of the protected age class and suffered from an adverse employment action insofar as he was terminated.   It argues, however, that the Complaint does not allege facts to support the final element, i.e., that Plaintiff's replacement or replacements were sufficiently younger to permit a reasonable inference of age discrimination.[2]   Pike Telecom specifically observes that the Complaint fails to allege the names and ages of the employees who allegedly replaced Plaintiff

---

[2]  Pike Telecom also argues that the Complaint does not allege that Plaintiff was qualified for his position.   However, for the same reasons that we rejected its argument that the Complaint does not adequately allege that Plaintiff performed his job satisfactorily, we reject this argument regarding his qualifications.

and that nothing else in the Complaint supports the assertion that Plaintiff was terminated because of his age.

As noted above, the Complaint alleges that "following Plaintiff's termination, [Pike Telecom] reassigned Plaintiff's duties and responsibilities to individuals sufficiently younger to support an inference of age discrimination."   (Compl. ¶ 33.)   While Pike Telecom correctly observes that the Complaint does not also allege the precise ages and names of the individuals who took over Plaintiffs' job responsibilities, the Third Circuit has stated that, to survive a motion to dismiss on an age discrimination claim, a Complaint need not plead the "replacements' exact ages" or "dates of birth," but that the "age[s] can come out in discovery."   Martinez, 986 F.3d at 264, 266-67).   Moreover, the Complaint alleges a number of other "suspicious details" that pertain to the fourth element of the ADEA claim.   Martinez, 986 F.3d at 267 (considering allegations of "suspicious details" in assessing whether the fourth element of an ADEA claim is sufficient pled). Specifically, it alleges that Plaintiff was at least 15 to 20 years older than other employees, that Itterly "condescendingly informed Plaintiff . . . that with Plaintiff's 'age and experience,' he should not have any questions" regarding his job responsibilities and performance,[3] and that Itterly favored Plaintiff's younger co-workers and "did not similarly mock [them] for asking for training and feedback."   (Compl. ¶¶ 31-32; see also id. ¶ 29 (identifying by name two younger employees).)   We conclude that these allegations are sufficient at this early stage to "raise a reasonable expectation that discovery will uncover evidence of a discriminatory motive."

---

[3] Pike Telecom argues that Itterly's comment is "objectively neutral" and that Plaintiff provides no factual support for his belief that the comment was condescending.   (Def.'s Mem. at 15.)   However, at this stage of the proceedings, we will credit the allegation that Itterly's comment was "condescending," not only because we are to accept the allegations of the Complaint as true, but also because we believe that the statement, on its face, could be reasonably perceived as condescending.

Martinez, 986 F.3d at 267.   We therefore reject Pike Telecom's argument that the Complaint fails to adequately allege the fourth element of Plaintiff's prima facie case.

Pike Telecom has also argued that because the Complaint alleges that it hired Plaintiff when he was 57 years old, just two months before it terminated him at the same age, the Complaint cannot plausibly allege that Plaintiff was terminated based on his age.   However, in support of this inflexible rule, Pike Telecom cites just one case, which considered plaintiff's age upon hiring in connection with a determination as to whether a plaintiff had put forth sufficient evidence on summary judgment to establish that the defendant's reason for an adverse employment action was pretextual.   Mercantanti v. WCI Operations, 645 F. App'x 228, 231 n.8 (3d Cir. 2016) (commenting that plaintiff's "claim of pretext [was] particularly implausible . . . because she was the same age when [the employer] hired her into the [her] position . . . as when it fired her from this position six months later").   This case is not on point here, where we are at the motion to dismiss stage, the plaintiff has no obligation to "anticipate and preempt the [defendant's] possible explanations" for its actions, and we must read the Complaint in the light most favorable to Plaintiff.   Martinez, 986 F.3d at 267; Shorter, 12 F.4th at 371 (citation omitted).   Accordingly, we do not find that the Complaint fails to state a plausible ADEA claim merely because Plaintiff was in the protected class at the time he was hired.

For all of these reasons, we deny Pike Telecom's Motion insofar as it seeks dismissal of Plaintiff's ADEA claim, finding that the Complaint includes "sufficient factual matter to show that the claim is facially plausible," Warren Gen. Hosp., 643 F.3d at 84 (quotation omitted), and gives "fair notice of what the . . . claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (2007) (alteration in original) (quotation omitted).

## IV.    CONCLUSION

For the foregoing reasons, we grant in part and deny in part Pike Telecom's Motion to Dismiss.   Specifically, we grant the Motion insofar as it seeks dismissal of Plaintiff's ADA retaliation claim but deny the Motion in all other respects.   An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.